## Lewis v. Lewis.

(Decided December 5, 1922.)

### Appeal from Warren Circuit Court.

1.  Divorce—Restoration of Property.—Property obtained by one spouse from the other in consideration of or by reason of their marriage relation must, according to section 425, Civil Code, and section 2121, Kentucky Statutes, be restored upon the granting of an absolute divorce if application be made for such relief.
2.  Divorce—Restoration of Property.—A court of equity has no jurisdiction in a case of limited divorce to restore property obtained by one spouse from the other.
3.  Divorce—Restoration of Property.—Although land is conveyed to the wife by a third party at the instance of the husband, she cannot retain it against the husband where absolute divorce is granted if it appear that the lands were purchased and paid for by the husband.

BRADBURN & HARLIN and MAX B. HARLIN for appellant.

SIMS, RODES & SIMS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Some thirty years ago appellant, W. A. Lewis, and appellee, Sarah J. Lewis, were married in the state of

Tennessee, but soon thereafter took up their residence in
Warren county, Kentucky. To their union were born
eleven children. W. A. Lewis owned and operated a
general store at the ferry about seven miles from the
city of Bowling Green in Warren county. After some
of the children were almost grown appellant and appellee
became estranged and appellee, Sarah J. Lewis, brought
an action in the Warren circuit court against her hus-
band, W. A. Lewis, for a divorce from bed and board,
alimony in the sum of $3,000.00, attorney fees and main-
tenance during the pendency of the action. In her peti-
tion she alleged cruel and inhuman treatment on the
part of W. A. Lewis. She set forth he was the owner of
a farm worth about ten or twelve thousand dollars,
containing 180 acres, and she herself owned a tract of
365 acres of land in Warren county of small value, and
that she had no other property. The action was pre-
pared by the taking of only a few depositions on each side
and submitted to the chancellor for decree. The wife
was granted a divorce from bed and board according
to her prayer, awarded $1,250.00 alimony and the cus-
tody and care of the eleven children. The defendant W.
A. Lewis, was required to pay the attorney fees of his
wife's lawyers and to pay certain unpaid installments
of the maintenance theretofore ordered and to pay the
cost of the action. A general order of attachment which
had been levied upon his land was sustained and the
wife given a lien upon the property for the payment of
all these items. There was some evidence in the record
showing that the lands which the wife claimed had been
purchased and paid for by the husband out of his own
estate and deeded to the wife as a result of their married
relations. The wife in her petition claimed the land as
her own and averred she bought and paid for it. The
answer of the husband denied this and set forth the way
and manner in which he bought and paid for the land.
The judgment in the original suit made no reference
whatever to the tract of 365 acres which the wife claimed.

It is the contention of counsel for appellee, Sarah J.
Lewis, that inasmuch as the title to the tract of 365
acres was put in issue, evidence taken and heard, the
judgment in favor of Sarah J. Lewis was a final deter-
mination in her favor, and this action is *res judicata*
on the question determined in the first action. Counsel
overlooks the fact that in the first action only a limited

divorce was granted and not one from the bonds of matrimony. By section 425, Civil Code, it is provided: "Every judgment for a divorce from the *bonds of matrimony* shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage in consideration or by reason thereof; any property so obtained without valuable consideration shall be deemed to have been obtained by reason of marriage." To much the same effect is section 2121, Kentucky Statutes, which provides that a divorce from bed and board alone may be granted even upon the same grounds for which a divorce may be granted.

Said section of the statutes provides: "Upon final judgment of divorce from the bonds of matrimony the parties shall be restored such property, not disposed of at the commencement of the action, as either obtained from or through the other before or during the marriage and in consideration thereof." Construing these sections we have held that where a divorce from bed and board only is granted no order for the restoration of property obtained by reason of the marriage relation can rightfully be ordered. In discussing this question in the case of Hoffman v. Hoffman, 190 Ky. 17, we said: "As part of the decree the chancellor adjudged that the parties restore to each other all the property which either may have obtained, directly or indirectly, from the other during the marriage and in consideration or by reason thereof. This was error for the reason that the divorce was merely from bed and board and it is only in case of absolute divorce that such an order or restoration is authorized by the statutes and Code." Ratliff v. Ratliff, 193 Ky. 708; Lewis v. Lewis, 194 Ky. 821.

It therefore appears that the chancellor who tried the case in 1915 and granted a limited divorce, did not have jurisdiction to enter an order for the restoration of property between the litigants. While the court had jurisdiction of the parties and of the subject matter it would not in a case where a limited divorce was granted order one spouse to restore to the other property obtained by reason of or in consequence of the marriage relation, for this power is statutory only. It follows, therefore, that the question of who owned the tract of 365 acres claimed by Mrs. Sarah J. Lewis was not before the court in such a way as to give the court

jurisdiction, and the chancellor no doubt realizing this, omitted to mention the said property in the judgment. Therefore, the question is not *res judicata.* A judgment on the merits is conclusive between the parties in subsequent actions on the same cause, not only as to matters actually litigated but as to all grounds of recovery which might have been determined therein if the court had jurisdiction thereof; but if the court had no jurisdiction of the parties or of the subject matter the rule of *res judicata* has no application.

At a later date and after five years from the commencement of the limited divorce action by the wife, the husband brought a suit against her for absolute divorce on the ground of five years' separation. The wife made no defense whatever to the cause and he was granted an absolute divorce from the wife. After the rendition of this judgment the husband instituted this action against the wife for the recovery of the tract of 365 acres of land which he says he purchased with his own means and caused to be conveyed to her by reason of and in consideration of their marriage relation and for no other consideration. In the new action the wife answered and said she bought and paid for the tract of land in question, and issue being joined and proof taken, both the wife and husband testified. The wife was asked:

"Q. Who did you buy it from (the land)? A. A. M. Harvey. Q. Is he a relative of yours A. Yes, sir, he is an uncle of mine. Q. Who paid the purchase money on it? A. It was paid out of both of our work; I stayed in the store and he went out part of the time. Q. How many years ago did you and Mr. Lewis buy that land? A. It has been about eleven or twelve years ago. Q. Who was the deed made to? A. Made to me. . . .

Cross-examined: "Q. Did you have any property when you married Mr. Lewis? A. Yes, sir; I didn't have much, but I had some property. Q. What? A. Some little things my father gave me. I had a cow, chickens, beds and quilts. That is all the property I had at the time I married. I had some feather beds, pillows and quilts. . . . Q. Did you ever work for wages or get anything for your work at any time? A. I worked in the store but did not get any wages. I suppose my work was worth something, when I was attending to two little children and stayed in the store, too; it looks like it ought to be worth something. Q. Did you work as one of the family and help Mr. Lewis

in the store, didn't you? A. Yes, sir, but a great deal of the time he was not in the store. Q. The money for the farm was paid by Mr. Lewis ? A. Paid by us out of what money we made by both of us out of what we made in the store. Q. Was it paid by yourself of by Mr. Lewis A. It was paid out of our work in the store. Q. I will ask you if you paid it personally? A. I know it was paid. Q. Did you pay it personally? A. I helped to pay it, just the same as paid it. Q. What person paid the money, yourself or Mr. Lewis? A. We were both there together and it was paid mostly at the store, first by me and then by Mr. Lewis together. Q. Was it paid out of the proceeds of the store? A. Some of it, part one way and part another; I could not tell how all of it was paid. Q. Did you pay a copper cent on that farm? A. Yes, sir, I helped to pay for it. Q. Did you pay it? A. Of course I worked and helped to pay it. Q. To whom did you pay it? A. ` E. M. Harvey. Q. Did you yourself pay Mr. Harvey? A. No, sir, I never paid it, but I seen it paid and that was sufficient.''

The wife further says she had no interest in the store whatever except as the wife of her husband and that he did not contract or agree to pay her for her services in the store.

On the other hand, the husband very emphatically says he bought the land and paid for it with his own money and that the wife had no interest whatever in the land. The title bond which was executed when the trade was first made shows the husband as the sole grantee of the land and that he had paid at that time, March 22, 1905, $800.00 cash in hand, leaving a balance between $800.00 and $1,150.00 the total price, yet unpaid. The title bond further shows that $200.00 was to be paid on the first day of the next July, and $150.00 to be paid on the first day of May, 1906, and a lien retained upon the land to secure the purchase money. It further recites that W. A. Lewis, the husband, "has this day executed and delivered to the said Harvey his two promissory notes as above mentioned, and to secure the prompt payment of said notes when due the said Lewis has sold and mortgaged all timber on said land except the poplar, and when the last note is paid the said Harvey agrees to make to the said Lewis a general warranty deed." This bond is signed by E. W. Harvey, the vendor. It therefore plainly appears that the wife had no interest whatever in the land except as the spouse of her hus-

band.  She neither bought nor paid for it.  After the final absolute divorce was granted the husband was entitled under section 425 of the Civil Code and section 2121, Kentucky Statutes, to a restoration of the said lands, and the chancellor erred to the great prejudice of appellant in holding otherwise.

At common law the husband and wife are under obligation to each other to perform certain duties.  The husband to bring home the bacon, so to speak, and to furnish a home, while on the wife devolved the duty to keep said home in a habitable condition.  Following this it has been held that an agreement by the husband to pay his wife for performing the ordinary household duties was not only without consideration but against public policy.  The rule was somewhat different with regard to service of a different nature, not domestic.  It was not the duty of the wife, unless she desired to do so, to perform labor for the husband outside of her regular household duties, but if she did so she was not entitled to recover their value of her husband.  There is no implied obligation on the part of the husband to pay the wife for such services as she renders outside of the ordinary household duties.  13 R. C. L., pp. 1089-90; 21 Cyc., pp. 1276-77.

Although Mrs. Lewis may have performed great services in the store of her husband, without a contract for remuneration she was not entitled to recover of him any part of the profits or other compensation, for the store belonged to the husband and her assistance in the store was as a member of the family without pay or expectation of reward save to aid the husband in making a living for the family, including their eleven children.

For the reasons indicated the judgment must be and is reversed for proceedings consistent with this opinion.

Judgment reversed.